UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL SANTIAGO-RODRIGUEZ<br><br>*Plaintiff*,<br><br>v.<br><br>FIRSTBANK PUERTO RICO, INC., ET AL.<br><br>*Defendants*. | Case No. 24-cv-1328 (MAJ) |

**OPINION AND ORDER**

### I.  Introduction

On August 7, 2024, Plaintiff Angel Santiago-Rodríguez ("Plaintiff") filed an Amended Complaint against FirstBank Puerto Rico, Inc. and First Mortgage, Inc. (collectively, "FirstBank" or "Defendants"). (**ECF 7**). The dispute concerns Plaintiff's failed attempt to purchase a house with financing provided by FirstBank. Plaintiff's Complaint seeks to recover damages from Defendants, alleging causes of action under the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Dodd-Frank Wall Street Reform and Consumer Protections Act ("Dodd-Frank Act"), various Veteran Administration ("VA") laws, and Puerto Rico's general tort statute, 31 P.R.L.A. § 10801.

On October 7, 2024, Defendants filed a Motion to Dismiss. (**ECF 12**). Plaintiff responded. (**ECF 25**). On May 22, 2025, the Court referred the Motion to Dismiss to Magistrate Judge Héctor L. Ramos-Vega for Report and Recommendation ("R & R"). (**ECF 38**). The Magistrate filed his R & R on May 22, 2025. (**ECF 39**). After moving twice for extensions of time, (**ECF 40, 42**), Plaintiff filed objections to the R & R on June 16,

2025. (**ECF 44**). For the reasons stated herein, the Court **ADOPTS** the R & R in full.

## II.     Factual Background[1]

Plaintiff is a veteran of the United States Armed Forces. (**ECF 7 at 5 ¶ 16**). On or about April 6, 2017, Plaintiff entered into a contract to purchase a residential property to be built by Rotonda Development in Guaynabo, Puerto Rico ("the Developer"). (**Id. at 7 ¶ 23**). Around this same date, he also "requested counseling and information" from FirstBank regarding the process for obtaining a mortgage loan. (**Id. ¶ 25**). According to Plaintiff, "during the initial processing of [his] loan application," he was not "informed, nor counseled with all the information he was entitled to, and rights he had," as a veteran. (**Id. ¶ 26**). Specifically, Plaintiff alleges that FirstBank failed to inform him that he qualified for a Veterans Administration guaranteed loan. Following this initial consultation, Plaintiff "took affirmative action" to secure a mortgage loan through FirstBank. (**Id. at 8 ¶ 27**).

Around August 2020, Plaintiff again reached out to FirstBank to inquire about a loan. (**Id. ¶ 29**). Plaintiff's case was reassigned to Officer Yazmin Díaz-Cosme, an employee of First Mortgage. (**Id. ¶ 32**). Plaintiff alleges that he continued to move his loan application process forward during this time, including by "submit[ing] loan documentation." (**Id. at 8 ¶ 33–9 ¶ 35**).

Though Plaintiff's Complaint is vague about what happened next, the properly-considered documents attached to Defendants' Motion to Dismiss indicate that several

---

[1] For the purposes of resolving the instant Motion, the Court treats all well-pled, non-conclusory, non-speculative facts as true, drawing all reasonable inferences in Plaintiff's favor. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

important events occurred during November 2020.[2] On November 9, a representative from the Developer sent a letter to Plaintiff, notifying him that the closing of the property was scheduled for December 9. (**ECF 12-2 at 23,** certified translation at **ECF 21-1 at 5**) ("the Letter").[3] The Letter also notified Plaintiff that if he did not plan to pay for the property in cash, he should submit to his lending institution "all the documents that are needed for [his] loan to be approved" within the next ten days, meaning by November 19, 2020. (**Id**). The Letter further informed Plaintiff that failure to attend the scheduled closing without advanced notice and good cause could result in the termination of his contract with the Developer. (**Id.**).

The property was inspected for appraisal on November 11, 2020. (**ECF 12-2 at 1, 8**). But the appraisal report was not signed until December 3, 2020, by an individual named Enrique Ferrer Urbina. (**Id. at 8**). On December 8, Defendants notified Plaintiff that they had approved his mortgage loan application. (**ECF 12-3**, certified translation at **ECF 21-1 at 6**). On the morning of December 9, Plaintiff received an email from Officer Díaz-Cosme at FirstBank informing Plaintiff that, pursuant to federal regulation, he would not be able to close on the house on that date using a loan provided by FirstBank. (**ECF 12-4 at 1,** certified translation at **21-1 at 7**) ("As I explained yesterday, the case

---

[2] When ruling on a motion to dismiss under Rule 12(b)(6), Courts generally should not consider documents "not attached to the complaint, or not expressly incorporated therein." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). However, courts make exceptions "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." *Id*. Plaintiff has not disputed the authenticity of any of the documents attached to the Motion to Dismiss, either in his Response or in his objections to the R & R. *See generally* (**ECF 25**); (**ECF 44**). The Court will therefore consider the undisputed documents presented by Defendant without converting the instant motion into one for summary judgment. *Cf*. FED. R. CIV. P. 12(d); *see also* (**ECF 39 at 15 n.5**) (R & R reaching the same conclusion).

[3] The certified English translation filed at **ECF 21-1 at 5** indicates that the Letter was dated November 9, 2021 rather than November 9, 2020. Because Defendants have submitted the original Letter in Spanish at **ECF 12-2 at 23**, the Court is satisfied that the date contained in the translation was a typographical error and the Letter was indeed dated November 9, 2020.

needs to be disclosed first and wait three days to close; this is per federal regulations."). Plaintiff replied that the Developer had not cancelled the closing, and he was prepared to write the checks needed for the closing. (**Id.**). Defendant then advised Plaintiff not to do so, and informed plaintiff that FirstBank would contact the Developer. (**Id.**). In the afternoon of December 9, Plaintiff received an email from the Developer, notifying him that the transaction had been cancelled because he had failed to attend the closing. (**ECF 7 at 11 ¶ 47**). Some time after the events of this case, Plaintiff successfully purchased a home in Florida and relocated there. (**Id. at 13 ¶ 56**).

### III. Legal Standards

#### A. Reviewing a Report and Recommendation

Under 28 U.S.C. § 636(b)(1), a federal district court judge may refer a dispositive motion to a magistrate judge for a report and recommendation, which the district court is free to then "accept, reject, or modify, in whole or in part." *Alamo Rodríguez v. Pfizer Pharm. Inc.*, 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (quoting 28 U.S.C. § 636(b)(1)). Parties may file written objections to a report and recommendation within fourteen days after being served with the same. 28 U.S.C. § 636(b)(1). A party who files a timely objection is entitled to a de novo determination of "'those portions of the report or specified proposed findings or recommendations to which specific objection is made.'" *Sylva v. Culebra Dive Shop*, 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005). The district court "may accept those parts of the report and recommendation to which the parties do not object." *Total Petroleum P.R. Corp. v. Quintana*, 16-cv-2979, 2017 WL 3189867, at *1 (D.P.R. July 27, 2017) (citing *Hernández-Mejías v. General Elec.*, 428 F. Supp. 2d 4, 6 (D.P.R. 2005).

### B. Reviewing a Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6), in turn, allows a defendant to move to dismiss any complaint which fails "to state a claim upon which relief may be granted." When addressing a motion to dismiss under Rule 12(b)(6), courts must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g. See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). A complaint need not contain "detailed factual allegations," but must contain enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must "set forth factual allegations, either direct or inferential, regarding each material element" of their potential claim. *Pelligrino v. P.R. Int'l Speedway*, 07-cv-2058, 2009 WL 10680911, at *2 (D.P.R. Feb. 13, 2009) (citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). The allegations must be sufficient to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (citing *Twombly,* 550 U.S. at 570); *see also Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

### IV. Objections to the R & R and Analysis

Plaintiff has filed an objection to the R & R, raising several distinct arguments. (**ECF 44**). Plaintiff has not objected to the Magistrate's findings regarding TILA, RESPA, or the Dodd-Frank Act. Still, the Court has reviewed the applicable law and the Magistrate's recommendations, and agrees with the Magistrate that Plaintiff has failed to state a claim under any of those statutes. The Magistrate's findings with respect to those statutes are therefore **ADOPTED**. *Total Petroleum*, 2017 WL 3189867, at *1. The Court

will address each of Plaintiff's objections in turn.

### A. Plaintiff has failed to state a claim that Defendants negligently caused the cancellation of the closing.

Plaintiff has objected to the Magistrate's finding that he has failed to state a claim for damages under Puerto Rico's tort statute, Article 1536 of the Puerto Rico Civil Code. 31 P.R.L.A. § 10801 ("any person who, through fault or negligence, causes damage to another, is obliged to repair it."). (**ECF 44 at 12–14**). The Magistrate's conclusion was based on a finding that Plaintiff failed to state a claim for negligence. (**ECF 39 at 17**). After a de novo review of the Complaint and the entire record, the Court agrees with the Magistrate's finding on this issue.

The elements of negligence under Puerto Rico law are "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *Vázquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007) (citing *Cintrón Adorno v. Gómez*, 147 D.P.R. 576, 598–99 (P.R. 1999).[4] "The breach of duty element requires, at the outset, that a plaintiff establish a relevant duty of care." *González-Cabán v. JR Seafood Inc.*, 48 F. 4th 10, 14 (1st Cir. 2022). Such a duty can be created: (1) by statute, regulation, or contract; (2) as a result of a special relationship between the parties that has arisen through custom; or (3) based upon a traditionally recognized duty of care particular to the situation. *See De Jesús Adorno v. Browning Ferris Indus. Of P.R., Inc.*, 160 F.3d 839, 842 (1st Cir. 1998). When a negligence claim is based on an omission, rather than an affirmative act, the plaintiff

---

[4] Article 1802 of the Puerto Rico Civil Code of 1930 was replaced by Article 1536 when the new Puerto Rico Civil Code came into effect in 2020. *Dumanian v. FirstBank Puerto Rico*, 22-cv-1543, 2024 WL 197429, at *3 (D.P.R. Jan. 17, 2024). "Article 1536, however, contains the same elements as its predecessor, thereby leaving the tort statute practically unchanged." *Id.*

bears the burden of alleging facts supporting that the defendant was "under a duty to act." *Rodríguez-Quiñones v. Jiménez & Ruiz, S.E.*, 402 F.3d 251, 254 (1st Cir. 2005). To satisfy the proximate causation element, a plaintiff must demonstrate both that the defendant's breach of duty was the actual cause of plaintiff's injury, and that the injury was reasonably foreseeable to defendant. *Baum-Holland v. Hilton El Conquistador Mgmt., LLC*, 964 F.3d 77, 88 (1st Cir. 2020). To survive a motion to dismiss, a complaint must "set forth factual allegations, either direct or inferential, regarding each material element." *Pelligrino*, 2009 WL 10680911, at *2.

The Amended Complaint is vague as to what occurred during November and December 2020, and contains no allegations that FirstBank took any actions or made any negligent omissions between August 2020, when Plaintiff renewed his request to FirstBank for information about a mortgage loan, and December 8, 2020. *See* (**ECF 7 at 8 ¶ 29–9 ¶ 38**). Plaintiff has not articulated what duty he believes he was owed by FirstBank, nor provided any evidence as to the standard of care for potential lenders or banks when dealing with bank customers or potential borrowers. *González-Cabán*, 48 F. 4th at 14. Nor is it clear to the Court than any heightened or particularized duty has arisen based on the facts of this case. Quite the opposite, the general rule in Puerto Rico is that "no fiduciary relationship exists between a bank and its depositors or loan customers." *F.C. Imports, Inc. v. First Nat'l Bank of Boston*, 816 F. Supp. 78, 94 (D.P.R. 1993).

Even more fatal to Plaintiff's claim, however, is that he has failed to plausibly allege that any actions or omissions by FirstBank were in any way a *cause* of his injuries. Rather, the properly-considered evidence before the Court clearly indicates that it was *Plaintiff* who failed to timely secure the financing needed to purchase the house at issue. The Letter Plaintiff received from the Developer on November 9, 2020 stated unequivocally that,

"[i]n accordance with the provisions of" the contract between Plaintiff and the Developer, Plaintiff could choose from one of two options regarding securing financing. (**ECF 12-2 at 23,** certified translation at **ECF 21-1 at 5**). First, if not planning to pay for the house in cash, Plaintiff could "provide [his] chosen financial institution with all the documents that are needed for [his] loan to be approved" within 10 days, meaning by November 19, 2020 at the latest. (**Id.**). Alternatively, Plaintiff could choose to pay for the house with cash, in which case he was required to inform the Developer in writing by November 24 of this fact, and provide evidence that he had sufficient funds available. (**Id.**). The Letter further informed Plaintiff that failure to attend the scheduled closing without advanced notice and good cause could result in the termination of his contract with the Developer. (**Id.**).

Plaintiff has never alleged that he provided FirstBank with the "all the documents that [were] needed for [his] loan to be approved" by November 19, 2020, as required. (**ECF 21-1 at 5**). Rather, the evidence shows that the Appraisal Report was not signed until December 3, 2020, by an individual named Enrique Ferrer Urbina. (**ECF 12-2 at 8**). There is no indication in the record to suggest that the Bank was in any way responsible for conducting the appraisal or signing the appraisal form, nor has Plaintiff alleged that Mr. Ferrer Urbina is a representative of FirstBank. Further, the Amended Complaint contains no allegations whatsoever as to what transpired between the date of the inspection on November 11, 2020, and the date that the appraisal form was signed, December 3, 2020. It is unclear to the Court why the appraisal form was not signed in time for Plaintiff to comply with his obligation to provide all necessary information to potential lenders by November 19, 2020, nor how this failure could be blamed on the potential lender.

Indeed, the facts of the case make clear exactly why the Developer advised Plaintiff to move quickly to apply for financing. Federal regulations provide that in the context of mortgage loans, creditors must provide consumers with certain required disclosures, including the terms and identification number of any loan related to the transaction, "no later than three business days before consummation." 12 C.F.R. § 1026.19(f)(1)(ii); 12 C.F.R. § 1026.38. Therefore, in order for Plaintiff to purchase a home on the scheduled closing date of December 9 using a mortgage loan from FirstBank, FirstBank must have approved the loan and made all other required disclosures by December 4, 2020. It thus makes good sense that the Developer asked Plaintiff to submit all required documents to potential sources of financing well in advance of this deadline. Plaintiff has not so much as suggested that any other party, including Defendant, contributed in any way to his failure to do so.

Nor there is any evidence that FirstBank negligently delayed approving the loan once the appraisal was finished: FirstBank notified Plaintiff that his loan application was approved on December 8, only three business days after the appraisal form was signed. (**ECF 12-3**, certified translation at **ECF 21-1 at 6**). This promptness was despite that federal regulations give potential creditors thirty days, once they receive a completed loan application, to notify the applicant of whether they will approve the loan. 12 C.F.R. § 1002.9(a)(1)(i). Thus, the evidence suggests that rather than acting with negligence, FirstBank approved Plaintiff's loan application swiftly and diligently once it was able to do so.[5]

---

[5] Plaintiff also raises, for the first time in his objections to the R & R, the possibility that the three-day waiting period could have been waived, such that the closing could in fact have proceeded as scheduled on December 9. (**ECF 44 at 10**) (citing 12 C.F.R. 1026.19(f)(1)(iv)). But this regulation clearly states that it is the *consumer*, in this case the Plaintiff, who may choose to modify or waive the waiting period. 12 C.F.R. 1026.19(f)(1)(iv). The fact that Plaintiff failed to do so cannot be attributed as an action by FirstBank. Nor

Thus, it appears from the record that the actual cause of Plaintiff's injury was his own failure to timely secure financing. (**ECF 12-2 at 23,** certified translation at **ECF 21-1 at 5**). Even when viewing all of the facts in the light most favorable to Plaintiff, and making all reasonable inferences in his favor, the Court is at a loss to understand how or why this failure should be blamed on FirstBank, an apparent stranger to the contract between Plaintiff and the Developer.

Nor has Plaintiff plausibly stated a claim for negligence related to the communications between Plaintiff and Defendant on the morning of December 9, 2020. Plaintiff was aware, since November 9, 2020, that he was responsible for timely securing financing and attending the scheduled closing on December 9, and that failure to do so could result in the cancellation of the sale. (**ECF 12-2 at 23,** certified translation at **ECF 21-1 at 5**). The email exchange on the morning of December 9, 2020 (**ECF 12-4,** certified translation at **21-1 at 7–8**) took place *after* FirstBank informed Plaintiff that the sale could not go forward as scheduled using FirstBank financing. (**ECF 21-1 at 7**) (email from Officer Díaz-Cosme on December 9: "As I explained yesterday, the case needs to be disclosed first and wait three days to close; this is per federal regulations."). Whether the sale could have gone forward in spite of a lack of financing from FirstBank (for example, if Plaintiff had contacted the Developer to reschedule, or had attempted to pay with another source of funding), is entirely speculative, and would depend solely on the actions

---

has Plaintiff stated a claim that FirstBank was somehow negligent for failing to inform him of the possibility that the waiting period could be waived. To make out such a claim of negligence by omission, Plaintiff bears the burden of demonstrating that FirstBank had some duty to affirmatively inform him of the possibility of a waiver. *Rodríguez-Quiñones*, 402 F.3d at 254. Plaintiff has not even attempted to meet this burden: he has not alleged any facts which speak to whether FirstBank had a duty to so inform him. Nor is it clear that FirstBank's failure to inform Plaintiff of the possibility of a waiver was the cause of Plaintiff's harm. Plaintiff does not allege that he was unable to look up the regulations on his own, nor that, had he known about the option, he would have been able to make out the elements to receive a waiver under 12 C.F.R. 1026.19(f)(1)(iv).

of the Developer, who is not a party to this litigation.[6]

In short, Plaintiff has failed to raise "above a speculative level" the possibility that the cancellation of the sale was caused, even in part, by any action or omission by FirstBank. *Twombly*, 550 U.S. at 555; *Baum-Holland*, 964 F.3d at 88. Neither has Plaintiff alleged that FirstBank bore any duty toward Plaintiff, nor that such a duty would have required the Bank to do anything differently in this case. *Vázquez-Filippetti*, 504 F.3d at 49. Because the Amended Complaint has not "set forth factual allegations, either direct or inferential, regarding each material element" of a negligence claim, this claim must be dismissed. *Pelligrino*, 2009 WL 10680911, at *2.

### B. Plaintiff has failed to state a claim under any Veteran's Administration Laws.

Plaintiff also objects to the Magistrate's findings that mortgage banks do not have a duty to inform veterans of the option to request a loan guaranteed by the Veterans Administration. (**ECF 44 at 7**). Plaintiff states that as a veteran of the United States Armed Forces, he was entitled to the opportunity to obtain a mortgage loan guaranteed by the VA. For support, Plaintiff cites to 38 U.S.C. § 3710(a), which provides that, with exceptions, "any loan to a veteran, *if made pursuant to the provisions of this chapter*, is automatically guaranteed if [the purpose of] such loan is . . . To purchase . . . a dwelling to be owned and occupied by the veteran as a home." (**Id. at 4**) (emphasis added). Plaintiff has failed to set forth a claim for which relief may be granted under this statute.

To be clear, the fact that veterans may be eligible for housing loans on terms not

---

[6] Relatedly, Plaintiff has objected to the Magistrate's finding that there was a "legal impediment to conduct the closing" on December 9. (**ECF 44 at 11**). For the avoidance of doubt, the Court now makes clear that we do not hold that it was legally impossible for the closing to go forward on December 9, nor have we relied on any such determination by the Magistrate in reaching today's holding. The issue in this case is not whether it was legally possible for the closing to go forward on December 9 under an alternative set of speculative facts, but rather *why* the sale scheduled for that date was *in fact* cancelled.

available to others is not in dispute. But the statute cited by Defendant explicitly applies only to loans "made pursuant to the provisions of" Chapter 37 of Title 38 of the U.S. Code. *See* 38 U.S.C. § 3710(a). Title 38 is the section of the U.S. Code which codifies "Veterans' Benefits." Plaintiff has not alleged any facts suggesting that he ever requested or received a loan "made pursuant to" Title 38. Thus 38 U.S.C. § 3710 is inapplicable to the present case.[7]

Rather, the thrust of Plaintiff's argument is that he did *not* apply for or receive any benefits provided specifically to veterans during the relevant period, precisely because he did not know that he was eligible for such benefits. In short, it appears that Plaintiff blames FirstBank for his failure to apply for a loan made pursuant to the provisions of 38 U.S.C. § 3710, and insists that FirstBank had an obligation to inform him of his opportunity to do so. Yet Plaintiff has not identified any statute or regulation imposing on FirstBank a legal obligation to provide Plaintiff with such information. Plaintiff does note that the VA has propounded guidance which "encourages all lenders to continue offering financing to all eligible and qualified veterans," and that the VA "insists that lenders should refrain from any and all practices which might mislead veterans into actions which are contrary to their own best interests." (**ECF 44 at 6**) (citing VA Pamphlet 26-7, also known as the "VA Lenders' Handbook"). Yet mere "encouragement" and "insistence" contained in an administrative agency pamphlet does not, in and of itself, place a mandatory legal obligation on lenders to follow this guidance, nor does it create a legal cause of action against lenders. *See Rank v. Nimmo*, 677 F.2d 692, 697 (9th Cir.

---

[7]   In a similar vein, Plaintiff cites to, without attaching, various VA forms and pamphlets regarding when and whether a bank has "authority" to "close" a "veteran's guaranteed mortgage loan." (**ECF 44 at 5–6**) (citing to "VA Form 26-8736"; "VA Pamphlet 26-7, Chapter 1."). Because there has been no allegation that a loan guaranteed by the VA ever existed in this case, much less one that FirstBank "closed," Plaintiff's reference to these VA forms is also irrelevant.

1982) (holding that the VA Lenders' Handbook does not "have the force and effect of law.").

Nor has Plaintiff stated a claim that FirstBank was in some way negligent for failing to inform him of his eligibility for VA benefits. Such a theory of liability would be a claim for negligence based on omission, meaning Plaintiff bears the burden of demonstrating that FirstBank bore him some affirmative legal duty to inform him of his rights under the VA laws. *Rodríguez-Quiñones*, 402 F.3d at 254. Under Puerto Rico law, a legal duty can be created: (1) by statute, regulation, or contract; (2) as a result of a special relationship between the parties that has arisen through custom; or (3) based upon a traditionally recognized duty of care particular to the situation. *See De Jesús Adorno*, 160 F.3d at 842.

As noted, the VA statutes and pamphlets cited by Plaintiff in his objections do not place upon Defendants any legal duty, nor has Plaintiff pointed to any other statute, regulation, or contract which would create a duty. Nor does the Complaint plausibly allege that a duty has arisen through custom or exists based on a special relationship between the parties or the circumstances of this case. At most, Plaintiff provides, for the first time in his objections to the R & R, one anecdotal example of a bank in Florida who affirmatively informed him about his eligibility for a VA-guaranteed loan. (**ECF. 44 at 9**). Clearly, the fact that a single bank in another state affirmatively provided Plaintiff with such information does not establish that that Bank was under a duty to do so. The Court does not find this meager allegation sufficient to state a claim that a special duty of care existed, either due to the circumstances of this case in particular or to the relationship between lenders and borrowers in general. Plaintiff has cited to no authority which imposes a heightened legal duty upon potential lenders which would require them to affirmatively provide information about VA loans to borrowers. In fact, a brief review of

applicable caselaw suggests the opposite; that banks do not generally owe a fiduciary duty or other heightened duty to potential mortgagers. *See, e.g.*, *F.C. Imports, Inc. v. First National Bank of Boston*, 816 F. Supp. 78, 94 (D.P.R. 1993) ("Generally no fiduciary relationship exists between a bank and its depositors or loan customers.") (citations omitted) (abrogated on other grounds); *Resol. Tr. Corp. v. Carr*, 13 F.3d 425, 430 (1st Cir. 1993) (holding that bank, in its capacity as mortgagee, did not owe fiduciary duties to mortgagor); *In re Greenberg*, 229 B.R. 544, 550 (B.A.P. 1st Cir. 1999) (holding that bank did not owe client fiduciary duties in connection with proposed applications of her first mortgage prepayment, and likewise rejecting argument that bank violated covenant of good faith and fair dealing by failing to disclose which method of applying the prepayment would be most beneficial to her).

And even assuming, for the sake of argument, that the Bank did have a duty to inform Plaintiff of the existence of VA benefits, there is simply no basis for the Court to conclude that the Bank's failure to do so was in any way the cause of Plaintiff's injuries. There is absolutely no reason to assume that, had Plaintiff been informed by FirstBank about his eligibility for a VA loan, anything would have turned out differently. Plaintiff has never alleged any facts supporting the speculative notion that the timing would have been different, such that the closing could have gone forward as scheduled. Put simply, Plaintiff has failed to state a plausible cause of action under any law or regulation propounded by the VA.[8]

---

[8] Plaintiff also argues that it would be unconstitutional to determine that FirstBank was not required to affirmatively inform him about his eligibility for a VA guaranteed mortgage loan. (**ECF 44 at 7**). Specifically, Plaintiff argues that interpreting the law in a way which gives FirstBank "the authority to determine when they will provide such valuable information to veterans" is "contrary to constitutional rights to due process and equal protection of the laws, and constitutional construction of statutes." (**Id.**). Plaintiff has failed to articulate, and the Court is at a loss to understand, why Plaintiff believes giving lenders

## V. Conclusion

It is unfortunate that Plaintiff in this case was unable to purchase the home at issue. It appears to the Court that there were multiple junctures at which the relevant entities, including Plaintiff, Defendants, and the Developer, could have tried to work together to resolve this situation before it resulted in a permanent injury to Plaintiff. The Court joins Plaintiff in his frustration that these opportunities were not taken. Yet it is also not the case that a person can bring a legal action every time a situation does not work out in his favor or "could have" been handled differently. *See, e.g.,* (**ECF 44 at 11**). Federal Rule of Civil Procedure 12(b)(6) exists to protect the federal courts from exactly these types of frivolous claims, by requiring plaintiffs to allege facts which could plausibly amount to an actual claim under the law upon which relief could be granted. Because Plaintiff has failed to do so here, Defendants' Motion to Dismiss is **GRANTED**. This action is **DISMISSED** without prejudice in its entirety.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of July, 2025.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

---

this discretion is inherently unconstitutional, or why he thinks the right to be informed of his eligibility for a VA guaranteed loan is enshrined in the U.S. Constitution.

Moreover, to the extent Plaintiff is attempting to bring a constitutional challenge to Defendants' actions in this case, he has failed to state a claim. Private parties cannot be sued directly under the Constitution, and Plaintiff has made no attempt to allege that Defendants were at any time acting "under color of law," as is generally required to hold a private party liable for a constitutional violation. *See* 42 U.S.C. Section 1983; *Harron v. Town of Franklin*, 660 F.3d 531, 535 (1st Cir. 2011). Plaintiff has fallen far short of stating a plausible constitutional claim upon which relief can be granted.